## DAVIS v. CHATTANOOGA UNION RY. CO. et al.

### FARMERS' LOAN & TRUST CO. v. SAME.

(Circuit Court, S. D. Tennessee, E. D. January 1, 1895.)

ATTORNEYS—PROFESSIONAL CONDUCT—REPRESENTING DIFFERENT INTERESTS—DISCLOSING RELATIONS.

D., as owner of bonds secured by a mortgage given by a railroad company, filed a bill to foreclose it, making the trustee in the mortgage a defendant. Thereafter, the trustee filed a bill to foreclose; being represented by T., its New York counsel, and W., as local counsel. A receiver was appointed under the first bill, whose receivership was extended to the second bill, and the two suits were consolidated. Thereafter, C. & B., law partners, were engaged by T. as local counsel for the trustee. Prior thereto, they had filed intervening claims,—one for J. & Co., for $500, and one for J., for $60,000, for $1,500 of which priority was claimed over the mortgages. The intervention for J. also alleged that the railroad was occupying, as part of its right of way, three lots belonging to J.; that negotiations therefor were pending with the receiver; and that the price had been agreed on,—and tendering deeds conditioned on the approval of the court and the receiver. They had also filed a cross bill for a depot

company claiming rent from the railroad. All the proof on the claims of J. and J. & Co. had been taken and submitted to a master. When the foreclosure bills were filed, C. & B. were defending damage suits against the railroad, and afterwards continued their defense; being retained for such purpose by the receiver, through his general counsel, under an order directing the receiver to defend such suits. C. & B. were retained by T. as counsel for the trustee, as follows: T. telegraphed them, asking if there was any reason why they could not represent the trustee, as the illness of W. made it necessary to retain other local counsel. B., who did all the correspondence and business for the firm in the matter, telegraphed that he knew of no such reason, and followed it with a letter, in which he said that they desired to state the situation a little more fully; that T., of course, understood the D. case, and what had taken place in it; that they had been rendering W. such assistance as he had asked for since bringing his bill, which they believed was the only one of the two suits properly brought; that neither J. nor the railroad objected to foreclosure under such bill; that, this being so, it seemed to them that they were free to take hold of the case with T., where it was left by W.; that they had filed in the cases a claim for J., which was a general claim, except about $1,500; that D.'s bill sought to sell the depot company's property, but T.'s bill, as they understood, was only for sale of the railroad's property; that these were the facts, and, if T. saw no difficulty, they were ready for his service, but for him to feel free to select some one else, if he thought best. T. answered that he saw no impropriety in allowing J. priority for $1,500, or a little more, if necessary, provided the facts justified it, and, as the balance of J.'s claim did not ask priority, he saw no antagonism between their position as counsel for J. and as counsel for the trustee. *Held*, that while it would have been better, had B. more fully stated the circumstances (as is shown by complaint being made of his not doing so), and stated the pendency of the sale of the lots, the claim of the depot company, and that they were defending the damage suits, it appeared that they had not done so because they assumed that T. was familiar with the litigation, and that they might well regard the negotiations as to the lots, and the defense of the damage suits, as not hostile to the mortgage creditors, and that not having anticipated proceeding further with the claim of the depot company, and in fact not having done so, and nothing further having been done with regard to the purchase of the lots, or the claim of J., except to confirm the report of the referee with reference to such claim, leaving open the question of any priority, and all the claims of J. having been transferred to other counsel, there was nothing reflecting on the professional character or honor of C. & B.

Foreclosure suits by W. S. Davis against the Chattanooga Union Railway Company and others, and by the Farmers' Loan & Trust Company against such railroad company and others. Heard on such part of the petition of H. W. Bartol and others as charged C. D. Clark and Foster V. Brown, doing business as attorneys under the firm name of Clark & Brown, with unprofessional conduct.

McAdoo & Barr, for petitioners.
William Henry De Witt and Geo. W. Easley, for respondents.

Before LURTON, Circuit Judge, and KEY, District Judge.

LURTON, Circuit Judge (orally). No more delicate duty is ever imposed upon the court than an inquiry into the conduct of counsel. The court and the bar, in common with every right-thinking citizen, recognize the very great importance of the exercise of the utmost good faith in the relations which exist between client and attorney. The petitioners, H. W. Bartol and others, holders of bonds secured

by one of the mortgages executed by the Union Railway Company, for the foreclosure of which a decree has heretofore been entered in this cause, have intervened by petition, and, by consent of all parties, have been suffered to become defendants, with leave to defend any claim or charge sought to be asserted in these consolidated causes, in any way affecting the interests of the creditors secured by the mortgages. The matters sought to be questioned by Bartol and his intervening associates have not been passed upon in any final decree; and by consent of counsel, entered of record, every matter and thing affecting the interests of the petitioners have been opened for exception and further proof. Nothing therefore remains for the consideration of the court, at this hearing, except so much of the Bartol petition as imputes to Messrs. Clark & Brown, local solicitors for the Farmers' Loan & Trust Company, unprofessional conduct, and a betrayal of the interests of the said Farmers' Loan & Trust Company, in favor of certain other clients alleged to have been represented by them.

The Bartol petition contains the following statement and application to the court:

"Said allowance to said Clark & Brown is a gross fraud upon their rights, which no court of conscience would countenance, and that the conduct of said Clark & Brown, as shown by the record in this case, constitutes a breach of professional ethics, which cannot be too severely condemned, and which, your petitioners respectfully represent, merits the judicial notice of this honorable court."

In view of this application to the court, this court, at a former day, made the following order:

"It appearing to the court that on the 18th day of October, 1894, H. W. Bartol and others filed their petition in this cause, wherein various charges are made, reflecting upon the good faith and professional conduct of C. D. Clark and Foster V. Brown, practicing attorneys and solicitors of this court, and invoking the order of the court in respect thereto, and said solicitors appearing in open court, and moving that an order be made, setting said petition in this cause for hearing, particularly as to the matters aforesaid, it is, on said motion, ordered by the court that this cause and said petition, so far as the matters therein alleged affect said solicitors, be, and the same are hereby, set down for hearing on Monday, the 31st day of December, 1894, on the pleadings and such proof as the parties, or any of them, may adduce on the hearing; and either party may take proof at the office of the clerk of this court at any time, Sunday excepted, before the 31st day of December, 1894, and proof so taken, and the record in the case, may be used in evidence on the hearing. The clerk of this court will immediately furnish J. H. Barr, Esq., of the firm of Barr & McAdoo, the resident solicitors for the petitioners, with a copy of this order."

The charge thus made, affecting the professional honor of Messrs. Clark & Brown, is a very grave one, and the petition seeks to support it by averments which are matters of record. It must, in considering this very grave charge, be first noticed that Messrs. Clark & Brown were first retained to represent the interests of the trustee in the several mortgages sought to be foreclosed, not earlier than the 3d day of September, 1892. At that time the attitude of the pleadings was substantially this: Some time before, one Davis, claiming to be the owner of a large amount of defaulted coupons, secured

by one of the mortgages executed by the defendant railway company, filed a bill for the purpose of foreclosing the said mortgage. Subsequently, Gen. Samuel Thomas, for whose use Davis originally sued, filed an amended bill, claiming to be the owner of a considerable amount of the bonds secured in one or more of the said mortgages. The Farmers' Loan & Trust Company, as trustee in the mortgage sought to be foreclosed by Davis and Thomas, was made a defendant thereto. At a later date, the Farmers' Loan & Trust Company filed an original, independent bill to foreclose one of the mortgages under which it was trustee. That bill was filed by the local New York counsel of the trustee, Messrs. Turner, McClure & Rolston, who had associated with them as local counsel, Mr. William M. Baxter, of Knoxville. Under the Davis and Thomas bill, a receiver had been appointed, and placed in charge of the Union Railway Company's property; and when, subsequently, the Farmers' Loan & Trust Company filed its foreclosure bill, the receivership under the original bill was extended to this bill. The two suits were consolidated, and ordered to be heard together. Messrs. Clark & Brown, partners in the practice of law, and solicitors, residing at Chattanooga, had, before their employment by the Farmers' Loan & Trust Company, filed three intervening claims: (1) A claim for James & Co., for about $500. (2) A claim for C. E. James. This latter claim aggregated about $60,000. The petition set up that something more than $1,500 of this claim was entitled to priority over the mortgage creditors, by application of the three-months rule, giving preference for supplies and materials furnished within three months prior to the appointment of the receiver. The same intervention for Mr. James alleged that the Union Railway Company and its successor, the Chattanooga Union Railway Company, were occupying three lots or parcels of ground belonging to said James, as a part of their right of way, and that a portion of the property thus occupied by them was held by them under a lease. It is alleged that negotiations were pending with the receiver for the purchase of these said lots, and that the price had been agreed upon; and the petitioner tendered deeds conveying an absolute title to the entire three lots or parcels of land, conditioned upon the approval of the court and of the receiver, looking to the best interests of all the creditors. (3) Clark & Brown had also filed a cross bill for a corporation known as the Union Depot Company, which owned a depot and terminal facilities which had been theretofore used by the Union Railway Company, alleging that certain rents were due from the railway company to the depot company for use and occupancy of their depot and terminal facilities. Proof had been taken with respect to some of these claims, and the matter, with respect to the accounts of James & Co. and C. E. James, was pending before a master, upon a reference; but all the proof in regard to these two matters had been concluded, and the master was preparing his report thereon, when the sudden illness of William M. Baxter rendered it necessary that these parties should secure other counsel to aid them in the future conduct of the case, so far as the interests of the Farmers' Loan & Trust Company were concerned. (4)

At the time of the filing of the first foreclosure bill, Messrs. Clark & Brown, as counsel for the Chattanooga Union Railway Company, were engaged in defending a considerable number of damage suits pending in the state courts, in which about $140,000 was sought to be recovered against said company. After the appointment of the receiver, they continued the defense of these cases, claiming to have been retained for that purpose by the receiver, through his general counsel, Judge Lewis Shepherd, under an order directing the receiver to defend such suits. On the 30th day of August, 1892, Messrs. Turner, McClure & Rolston sent a telegram to Messrs. Clark & Brown. asking if there was any reason why they could not represent the Farmers' Loan & Trust Company, Mr. Baxter's illness making it necessary that other local counsel should be retained. This was answered by a telegram and letter, the first saying that they knew of no reason why they could not represent the trustee. The telegram was followed by a letter, which was in the following words:

"Chattanooga, Tenn., Aug. 30th, 1892.

"Messrs. Turner, McClure & Rolston, New York City—Gentlemen: Your telegram is received, and we answer the same briefly. In addition to the answer, we desire to state the situation a little more fully. You, of course, understand the Davis case, and what has taken place in that. We have, as a fact, been rendering Mr. Baxter such assistance as he called on us for, since his bill was brought, which we believe is the only one of the two suits which is legally and properly brought. Neither James nor the Union Railway have offered any objection to foreclosure under your bill, and, as we understand, they do not desire to do so, but, on the contrary, are anxious to see the property brought to a sale thereunder; and, this being so, it seems to us that we are free to take up the litigation where we find it, as left by Mr. Baxter, and carry it to a termination with you, if you desire, and will be very glad indeed to serve you in this or any other particular. Now, we have filed in the two cases, or, rather, under the style of the two cases, a claim for James himself, which is a general debt, except about $1,500, of which he claims ought to be allowed as operating expenses, because recently advanced by him to pay employés' wages, which, of course, will only be allowed by the court, or insisted upon by us, in case he brings himself within the rules which would entitle him to the same. You remember that, under Davis' amended bill, it is sought to sell the Union Depot property; but your bill, as we understand, is only for the sale of the Union Railway property. Now, these are the facts, and we put them before you; and, if you think there is no difficulty in our way, please say so, and we are ready for your service. If, however, there is anything in the situation, on account of which you think it best for some one else to represent you, please feel free to act accordingly, and without thinking for a moment that your action would be in any way unpleasant to us, assuring you it would not.

"Yours, truly,                                                    Clark & Brown."

Now, that letter indicates that Clark & Brown assumed that the New York counsel were familiar with the state of the pleadings, and the situation of the case as it then stood. They say:

"You, of course, understand the Davis case, and what has taken place in that. We have, in fact, been rendering Mr. Baxter such assistance as he called upon us for, since his bill was brought, which, we believe, is the only one of the two suits which is legally and properly brought."

They then spoke of the fact that neither James nor the Union Railway Company objected to the foreclosure under the bill of the Farmers' Loan & Trust Company, and did not desire to do so, but

were anxious to see the property brought to a sale under it. They then added:

"This being so, it seems to us we are free to take up the litigation where we find it left by Mr. Baxter, and carry it on to a termination with you, if you desire, and will be very glad to serve you in this or any other particular."

But they stated further in this letter that they had filed a claim for James, which was a general debt, except about $1,500, which he claimed ought to be allowed as operating expenses, because recently advanced by him to pay employés' wages, which, of course, would be allowed as a prior claim, in case James brought himself within the rules which would entitle him to the same. They conclude their letter as follows:

"Now, these are the facts, and we put them before you. If you think there is no difficulty in our way, please say so, and we are ready for your service. If, however, there is anything in the situation, on account of which you think it best for some one else to represent you, please feel free to act accordingly, without thinking for a moment that your action would be in any way unpleasant to us, assuring you that it would not."

The New York counsel of the Farmers' Loan & Trust Company wrote their reply to this letter September 1, 1892. This letter could not have been received earlier than September 3, 1892. The reply was as follows:

"We have received your letter of August 30th. We understand from it that you are acting for Mr. James in the claim, of which, perhaps, $1,500 or more may be for money advanced or borrowed by him for operating expenses, etc., to pay employés' wages, but that you do not claim priority to the mortgage debt, except for the special money so advanced or borrowed. We see no impropriety in allowing the $1,500, or a little more, if necessary, as operating expenses, with the lien prior to the mortgage, provided the facts are such as to justify it; and, as the balance of Mr James' claim does not ask priority, we do not see that there can be any antagonism between your position, as acting for Mr. James, and your position as acting for the Farmers' Loan & Trust Company. We are glad, therefore, to believe that there is nothing in your letter which militates against the position of your telegram to us."

Now, it will be observed that the letter of Clark & Brown does not go into all the details. It does not explicitly state that they had theretofore filed a petition for the Union Depot Company, setting up a claim against the Union Railway Company for rent. It does not state that Mr. James had or claimed title to several lots over which the railroad had been constructed, and was negotiating the sale of such lots to the receiver. Neither do they mention the fact that they had been representing the railway company in suits brought against it for damages for personal injuries. It is now asserted that the failure to state these details amounts to a failure to give full notice to the New York counsel, and is therefore such unprofessional conduct as merits the disapprobation of the court. The fact that such a question is now made shows that it would have been better, had Messrs. Clark & Brown, or Mr. Brown, (who seems to have conducted the correspondence and litigation,) more fully stated the circumstances affecting their attitude, by stating the pendency of the sale of the lots to the receiver, the claim of the Union Depot Company, and the fact that they represented the de-

fense in certain damage suits, with the same particularity that they stated the claims of their client, James. Had they done so, there would, perhaps, have never been any question, such as is now raised in this case. The reason Clark & Brown did not fully state these matters seems to us to be that they assumed that the New York counsel of the trust company were already familiar with the litigation to which their client was the principal party, and in which they had been represented locally by Mr. Baxter, and already knew the general attitude of the claims which had been filed in the case against the insolvent railway company. They seem to have regarded great detail of statement as unnecessary, under the circumstances. They doubtless regarded the negotiations between Mr. James and the receiver for the sale of the lots as a matter not in any degree hostile to the mortgage creditors. If the Union Railway Company had no title to these lots, and they were essential to the preservation of the railway as a unit, and Mr. James was negotiating with the receiver, who represented all the property interests and all the creditors of the insolvent corporation, and was the officer and agent of the court, it could hardly be regarded as a claim in any degree hostile to the mortgage creditors. And this, we assume, was the reason Clark & Brown said nothing about this matter.

Now, as to this claim of the Union Depot Company against the Union Railway Company, it is not mentioned in this petition. No complaint is made that Clark & Brown said nothing about the fact that they had at one time represented the Union Depot Company in a claim adverse to the Union Railway Company. That Clark & Brown said nothing about this pending claim is possibly due, in part, to the fact that they assumed that the New York counsel knew the state of the pleadings, or that they had been informed by Mr. Baxter of the pendency of that claim, and in part to the fact that they did not anticipate proceeding further with the claim. And so with respect to the fact that they were representing this railway company in these damage suits. They might well assume that, whatever the damage suits were, if they resulted in judgments, they would be preferred, under the Tennessee statutes, to the mortgage. This is the well-settled law in Tennessee, and is not controverted by any one. The inquiry was, "Are you in a situation to represent the Farmers' Loan & Trust Company?" So far as these pending damage suits were concerned, they were in such situation, for their defense of these suits was in the interest of the mortgagees. Now, taking these matters up one at a time: These claims of James & Co. and of James we shall treat together, as they were linked together in the mind of Mr. Brown when he wrote this letter, when he stated that about $1,500 was claimed for James as a preference. C. E. James was the James of the firm of James & Co., and, when Mr. Brown mentioned the claim of James, he doubtless included the firm claim with the individual claim of James. Now, with respect to what they said about the James claims. We think they dealt with the utmost fairness. They gave to their correspondents full information with respect to their attitude towards the James claim;

and, with respect to so much of it as was asserted as a preference, the New York counsel thoroughly agreed that that claim and conflict could not prevent representation of the trustee in other matters. Of course, there was a conflict, so far as they were expected to represent the mortgage creditors, but that attitude often exists with counsel, where many claims are filed in one case, and no one supposes that there is anything unprofessional about it. It is the duty of counsel, in such case, to abandon one claim, or to inform their client of the conflict, and have a thorough understanding that, with respect to this conflict, one or the other must look to other representation. We think that was sufficiently explained to the New York counsel and trustee, and that not the least blame attaches to Mr. Brown on the subject of the claim of James or James & Co. That there was precisely $1,500 was not stated in the letter of Clark & Brown. In response to the New York lawyers, they say that $1,500, or a little more, might be allowed as operating expenses.

Now, that brings us to the claim in respect to the land. We have observed that it might have been better to have stated the character of that pending matter to the New York counsel. Yet, at the same time, we repeat that that could hardly be regarded as a claim conflicting with mortgage creditors; for, if the railroad company did not own that property, the question of whether they should own it was to be determined finally by the court. It would be a question for the receiver, in the first instance, representing all persons; and, in the second instance, it must be confirmed by the court, and the interests of all would be protected,—the receiver, in such matters, standing for the general interests of creditors.

Next, with respect to the claim of the Union Depot Company. Undoubtedly, if Clark & Brown expected to continue to prosecute that claim, and the loan and trust company was not aware of it, and if they had continued to prosecute it, there might be ground of complaint. But no subsequent step was ever taken by Clark & Brown, which operated to fasten any one of these claims upon the insolvent railway company or the fund. They did not, after their employment by the Farmers' Loan & Trust Company, do anything, except confirm the report with reference to the James claim, which report contained a recommendation of the receiver that these lots should be purchased. The decree confirming the report of the master in these matters was guarded to a degree that Clark & Brown were hardly called upon to exercise. They were justified in confirming so much of that report as gave a preference to the extent of about $1,500, but instead of confirming it, and making it a first lien prior to the mortgages, they reserved the question of priority in the face of the decree; and to this day it has never been declared, nor have they sought to have it declared, a preferential claim, and, with reference to the purchase of these lots, it stands to-day as it stood then. The purchase has never been concluded. It has never been submitted to the court for its adoption, and no step was taken by them with a view to completing the sale to the receiver. This is, perhaps, explained by the facts testified to by Mr. Brown, Judge Shepherd,

and Receiver Chamberlain, that very shortly after this decree of confirmation of October 8, 1892, Mr. James transferred all his claims to Gen. Sam. Thomas, represented then and since by Judge Shepherd. Clark & Brown have never since represented Mr. James in any of these claims. Nor has Judge Shepherd, nor the assignee of these claims, nor any one else, sought yet to have the claims preferred to the mortgage, or to complete the purchase of the James lots. The deeds have not been delivered. The purchase money remains wholly unpaid, and the receiver's purchase unadopted. Now, if, at any subsequent date, there had been an effort made to confirm the sale of these lots, it would have been the duty of Clark & Brown to call the attention of their clients to it, so that they might decide whether this land should be bought or not; but no action has arisen with respect to it, and no occasion has arisen for calling this to the attention of their clients. No step was ever subsequently taken by Clark & Brown in the Union Depot matter. With respect to the Union Depot claim, the testimony of Mr. Brown is very positive that, about the time of their employment by the trustee, they abandoned that depot claim, and did so by the consent and direction of their client Mr. Erb. The defense of the damage suits by Clark & Brown did not in any way conflict with the mortgage creditors, but it was to their interest.

Now, it is argued that it is doubtful whether the receiver's counsel had sufficient authority to continue the services of Clark & Brown in the damage suits pending at the time the receiver was appointed. It strikes the court that it was wise to do so, as it is dangerous to take a case of that kind out of the hands of lawyers who have had charge of it from its beginning, and Judge Shepherd's known familiarity and large experience in this class of litigation is such that no one knew better than himself the impropriety of permitting Clark & Brown to retire from these cases. Whether that was true or not, the question as to whether Clark & Brown were entitled to a fee for the defense of the damage suits was a question they had a right to present, by filing their claim with the receiver, and they had a right to state the amount they claimed. It was the duty of the receiver to pass upon it. If he thought it was improper or excessive, it was his duty to resist it. They did file their claim, and they claimed compensation for services rendered before the appointment as well as after, stating the items and charges with great particularity. Now, with regard to the liability of the fund for services of counsel before appointment of receiver, Judge Jenkins, of the Eighth circuit,—one of the ablest of the circuit judges,—has held, as we learn, that counsel are within the six-months rule, and are entitled to same preference under some circumstances, especially if counsel have been engaged in defending claims entitled to priority. Whether or not this is the law, is not decided. It furnishes at least a strong reason for asserting a claim against the receiver. It was for the receiver to determine whether it should be contested or not. His failure to contest warrants no charge against Clark & Brown. The

claim is pending, and wholly unadjudicated. From the time of the employment of Clark & Brown as local counsel for the Farmers' Loan & Trust Company down to the filing of the Bartol petition, there was a very frequent and voluminous correspondence carried on between Messrs. Turner, McClure & Rolston, the New York counsel, and Clark & Brown, local counsel. That entire correspondence has been submitted for the inspection of the court, and has been thoroughly considered. There is nothing in it that in the slightest degree reflects upon the professional character or honor of Clark & Brown. It shows great diligence and energy in the management of the many questions which were presented in these pending foreclosure cases. It indicates, also, that they conferred with great freedom of detail as to all pending questions with the New York counsel. Much oral testimony has been heard with respect to the subsequent relations of Clark & Brown with the Union Depot Company, and the claims of James. The pleadings and the decrees of the court in the two pending cases have been thoroughly inspected. Every possible light has been thrown upon the conduct of the gentlemen accused of unprofessional conduct. So far as Mr. Clark is personally concerned, it is proper to remark that he had nothing to do with the management of these cases, or any of the claims at any time represented by this firm. The correspondence, as well as the management of these cases, has fallen upon the junior member of the firm, Mr. Brown. With respect to the management, and with respect to their entire conduct since the 3d day of September, 1892, we are glad to be able to say that they have faithfully and loyally and ably represented the interests of the Farmers' Loan & Trust Company. No act of commission or omission is discoverable, by which the interests of the trustee, or of the creditors represented by the trustee, have been injuriously affected. There was nothing whatever in the correspondence, the oral evidence, or in the pleadings and decrees of record, which in any degree reflects upon the professional character or honor of the firm of Clark & Brown, or either member thereof. No members of this bar have borne more spotless reputations than the two gentlemen, the subject of this very grave accusation; and it has given the court very great pleasure, after laborious investigation, to be able to say that they have passed the ordeal untainted and unspotted. So much of the petition, therefore, as reflects upon the professional character of these two gentlemen, and calls upon the court to take cognizance thereof, is dismissed, at the cost of petitioner Bartol and others.

KEY, District Judge. I concur fully with Judge LURTON. In addition, I will state that the litigation out of which these questions arise has all been conducted before me, as judge. The case has been hotly contested from the beginning, and the attorneys of all parties have ably and zealously maintained in open court the interests of their respective clients. No quarter has been asked or given, so far as I could see; but all the attorneys, in my opinion, have been

faithful to the interests of their clients. The cause has very often been before the court, and it has seemed to me that there has been more contention than necessary. I have never seen the slightest disposition on the part of any of the counsel in the case to compromise or surrender any interest or advantage of their clients.